UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FOUR SEASONS NURSING CENTER,**

    **Plaintiff,**

vs                                          Case No: 04-74614
                                             Honorable Victoria A. Roberts

**WEBER MEDICAL SYSTEMS, LLC.,**
**OMNICARE RENAL SERVICES,**
**OMNICARE, INC. WESTHAVEN**
**SERVICES CO.,**

    **Defendants.**
_____/

**OPINION AND ORDER DENYING IN PART AND
GRANTING IN PART, DEFENDANTS' MOTION TO DISMISS**

**I.    INTRODUCTION**

This matter is before the Court on Defendants' motion to dismiss. The Court **GRANTS** Defendants' motion in part and **DENIES** it in part.

**II.    BACKGROUND**

Plaintiff Four Seasons Nursing Center ("Nursing Center") maintains a nursing facility, in Westland, MI. Defendant Omnicare, Inc. provides pharmaceutical care for seniors. Defendants Weber Medical Systems, LLC ("Weber") and Westhaven Services Co. ("Westhaven") are subsidiaries of Defendant Omnicare Inc., that are alleged to have operated jointly under the name Omnicare Renal Services (jointly "Omnicare").

The Nursing Center filed a complaint against Omnicare alleging breach of contract, promissory estoppel/detrimental reliance, negligence, and tortious

interference.  All of these claims arise from Omnicare's alleged failure to install and maintain a hemodialysis unit at the Nursing Center within what the Nursing Center refers to as  the "customary reasonable time" of six to eight weeks.

Omnicare provides home dialysis services and equipment to individual nursing home residents.  Omnicare undertakes all scheduling and monitoring of dialysis treatments, and maintains and disinfects the water treatment system used in connection therewith and other associated functions.  Omnicare is paid for dialysis supplies and equipment either directly by the patient or, on the patient's behalf, through programs such as Medicaid.

Sometime before August 2000, the Nursing Center discussed with Defendants the establishment of a dialysis unit.  In August of 2000, the parties entered into an alleged oral agreement regarding such services.  Pursuant to that alleged agreement, Defendants agreed to: (1) provide dialysis supplies and equipment; (2) coordinate appropriate staffing for the dialysis unit; (3) provide in-service training for the facility staff; and (4) design, disinfect, treat, and maintain the water treatment system.

On August 10, 2000, Denise Blackner, Regional Director of Infusion Services for Westhaven Services, wrote a letter to Charles Dunn, Executive Director of the Nursing Center, stating the responsibilities that Omnicare and the Nursing Center would undertake.  The letter does not mention a specific agreement with the Nursing Center, but it does mention previous discussions suggesting possible negotiations and/or agreements.  "With the above in mind, and as you requested, Omnicare agrees to hold your facility harmless for any acts or omissions by it in the provision of home dialysis equipment and services to an individual resident.  Further, as you requested, this letter

2

confirms that Omnicare will comply with applicable Federal and State laws relating to the provision of home dialysis equipment and services and Medicare Part B billing requirements." [Amended Complaint, Exhibit A].

Omnicare set up a Home Hemodialysis Unit at the Nursing Center prior to November 27, 2001. The opening and operation of the unit was subject to the approval and requirements of the State of Michigan, Department of Consumer and Industry Services ("CIS").

On November 27, 2001, CIS approved the Home Hemodialysis Unit for patient use at the Nursing Center, contingent upon the satisfactory design, treatment, and maintenance of the water treatment system. Also on November 27, 2001, Robert Salkeld, Sanitarian of the Health Facilities Evaluative Section of CIS, sent a letter to Diane Hopfer, R.N., of Omnicare. Salkeld advised Defendants of continued concerns with "dead end piping in the treated water distribution system." He further recommended "that the unit operators closely monitor the biological quality of the water, and that the unit operators insure that the treated water meets all standards for chemical and microbiological contaminants for hemodialysis prior to the initiation of patient treatment." [Amended Complaint, Exhibit B].

After notification that CIS approved its hemodialysis unit for patient treatment subject to the contingency, the Nursing Center began to secure relationships with hospitals and managed care referral sources. It advertised the opening and operation of its dialysis unit, changed some of its beds, and reduced its total number of beds to make room for the dialysis unit. The Nursing Center prepared to provide hemodialysis services with Defendants' support beginning January 1, 2002.

3

Not until December 16, 2002, through a letter to Charles Dunn, did Defendants enumerate the responsibilities of the parties with respect to the dialysis unit. In this correspondence, Defendants attached an outline stating the various responsibilities of all parties involved in providing dialysis treatment to patients. Maintaining the water treatment system was one of Defendants' responsibilities.

According to the record provided to the Court, there was no communication between the Nursing Center and Omnicare between December 17, 2002 and October 2003. The dialysis unit was open and operable in October 2003.

On these facts, Defendants contend that Plaintiff failed to state a claim for breach of contract, promissory estoppel/detrimental reliance, negligence, and tortious interference and file this motion under FRCP 12(b)(6).

### III.   STANDARD OF REVIEW

Rule 12(b)(6) provides that an action should be dismissed where the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While "the Court must presume all well-pleaded factual allegations in the complaint to be true" on a motion to dismiss, allegations consisting of "bald assertions and conclusions of law will not enable a complaint to survive." *QQC, Inc. v Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003) (The Court will not . . . accord the presumption of truthfulness to any legal conclusion, opinion, or deduction, even if it is couched as a factual allegation."); *See also Easy Way, Inc., v Transp. Int'l Pool, Inc.,* No. 01-2411, 2003 WL 21259677, at *2 (6th Cir. May 27, 2003) (unpublished)("the court 'need not accept as true legal conclusion or unwarranted factual inferences'") (citing *Morgan v Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

IV.     **APPLICABLE LAW AND ANALYSIS**

   A.    **Breach of Contract**

   1.    **The Plaintiff fails to state a claim for breach of contract**

Plaintiff alleges that the contract Defendant agreed to perform was "to provide certain responsibilities with regard to the set up and operation of a dialysis unit." [Complaint, ¶11] This agreement allegedly occurred in August 2000. The agreement included a promise to "design, disinfect, treat and maintain the water treatment system for the dialysis unit." [Complaint, ¶ 12]. Plaintiff further alleges that "based upon communications between the parties," Plaintiff was prepared to provide hemodialysis services to patients beginning January 1, 2002 [Complaint, ¶ 17]. The breach, according to Plaintiff, was Defendants' failure to properly design, treat and maintain the water treatment system "within the reasonable and customary time of six to eight weeks." [Complaint, ¶ 19].

Despite Plaintiff's allegation that the so called agreement was struck in August, 2000, and that Plaintiff expected to provide services to patients by January 1, 2002, Plaintiff also admits that Defendants did not enumerate their exact responsibilities until December, 2002. And, despite the fact that such enumeration did not occur until December, 2002, Plaintiff claims damages for all of 2002 and 2003 [Complaint, ¶ 22]. Even viewing the allegations in a light most favorable to Plaintiff, Plaintiff alludes only generally to: (1) an agreement reached in August, 2000; (2) some vague communications thereafter that the hemodialysis unit would become operational two years later, in January, 2002; (3) an enumeration of party responsibilities that isn't done

5

until nearly a year after the so-called agreed upon operational date; and (4) a "customary" - not an agreed upon - time frame for performance by Defendants.

In response to Defendants' motion, Plaintiff reiterates what it set forth in its Complaint and Exhibit A (dated August, 2000) and Exhibit C (dated December, 2000) to the Complaint, neither of which expresses a contractual agreement between the parties or when the so-called contract is to be performed.  The Court finds there was no meeting of the minds on essential terms; Plaintiff's breach of contract claim fails.

### 2. **Contract Claim Barred by Statute of Frauds**

Even assuming, *arguendo*, that Plaintiff had otherwise adequately alleged the existence of a valid oral contract (which it has not), Plaintiff's breach of contract claim would nevertheless be subject to dismissal on the ground that it is barred by the Michigan statute of frauds, which requires any "agreement, promise, [or] contract . . . relating to medical care or treatment" to be in writing.  MCL §566.132; *see Powers,* 455 N.W.2d at 373 (finding that statute "requires a writing for *any* agreement, promise or contract *relating to* medical care or treatment") (emphasis added); *Malik v. William Beaumont Hospital*, 423 N.W.2d 920, 925 (Mich.App. 1988) (same).

Michigan courts have held that in order to satisfy the statute of frauds, "a writing must contain all of the essential terms of the contract with the degree of certainty which would obviate any necessity for parol evidence."  *Gilmore v. O'Sullivan*, 307 N.W.2d 695, 697-98 (Mich.App. 1981) (citing *Ass'n of Hebrew Teachers v. Jewish Welfare Federation,* 233 N.W.2d 184, 187 (Mich.App. 1975)) *see also Marina Bay Condo, Inc. v. Schlegel*, 423 N.W.2d 284, 287 (Mich.App. 1988) ("To satisfy the statute of frauds, the writing must be certain and definite" as to, among other things, the parties,

consideration and time of performance); *Lorimer v. Berrelez*, 331 F.Supp.2d 585, 591 (E.D. Mich. 2004) (same). Plaintiff's failure here to identify -- much less attach to the complaint -- any such writing renders the alleged contract void under the statute of frauds and provides an independent basis for dismissing plaintiff's breach of contract claim. *See, e.g., Easy Way, Inc.,* 2003 WL 21259677, at *3 (affirming dismissal of breach of contact claim as barred by statute of frauds); *Lorimer v. Berrelez*, 331 F. Supp.2d 585, 591-92 (E.D. Mich. 2004) (dismissing breach of contract claim as barred by statute of frauds)[1]. As but one example, nowhere in either of the letters attached to the complaint is there any reference to -- much less a "certain and definite" statement of -- the time frame within which the dialysis unit was supposed to be "up and running."

### B. Detrimental Reliance

Defendants assert that Michigan "does not appear to recognize an independent cause of action for 'detrimental reliance,'" and that Plaintiff's claims are instead rooted in promissory estoppel. [Defendants' Motion to Dismiss, p. 12, fn. 5]. In support of this position, Defendants cite *Torsky v. Avon Products, Inc.*, 707 F.Supp. 942, 945 (W.D. Mich. 1988). Defendants misread *Torsky*. In *Torsky*, the court, citing *Goldstein v. Kern*, 82 Mich.App. 723, 728 (Mich.App. 1978), precluded a plaintiff's claim of detrimental reliance upon an at-will employment contract, in foregoing another employment opportunity. The Court held that an employee's "detrimental reliance in foregoing

---

[1] See also *Powers*, 455 N.W.2d at 373-74 (dismissing breach of contract claim on grounds that writings submitted by plaintiff were insufficient to satisfy statute of frauds); *Trybulec v Clark Foodservice, Inc.*, No. 209937, 1999 WL 33441164 at *1-2 (Mich.App. 1999)(unpublished) (Ex. K. hereto)(same); *Penner v Seaway Hospital*, 427 N.W.2d 584, 587 (Mich.App. 1988)(same) *Malik*, 423 N.W.2d at 925 (same); *Gilmore*, 307 N.W.2d at 697-98 (same).

another employment opportunity in order to accept the offered employment does not estop the employer from terminating his employment contract." *Id.* at 728.  Nowhere in *Goldstein* does the court hold or suggest that detrimental reliance is not a recognized cause of action in Michigan.

Nevertheless, it is clear that there is indecision in Michigan law as to whether detrimental reliance is a cognizable independent claim or only an element of other claims.  See *H.J. Tucker & Associates, Inc., v. Allied Chucker and Engineering Co.*, 234 Mich.App. 550, 572 (Mich.App. 1999).  As the Plaintiff cites no authority to the Court indicating detrimental reliance is a recognized independent claim or a standard by which a claim of detrimental reliance is to be adjudged, the Court dismisses the Plaintiff's claim.

### C.  Promissory Estoppel

The Plaintiff asserts a claim for promissory estoppel in its amended complaint.  The elements of promissory estoppel are: (1) a promise; (2) that the promisor reasonably should have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; and (4) in circumstances requiring that the promise be enforced if injustice is to be avoided.  *Hoye v. Westfield Ins. Co.*, 194 Mich.App. 696, 705 (Mich.App. 1992).

The Plaintiff contends that the Defendants promised to design, disinfect, treat, monitor and maintain the water treatment system for the dialysis unit to be established at the Nursing Center, meeting all federal and state regulations for the establishment of such within the customary six to eight week time frame.  A promise may be inferred

wholly or partly from conduct. *State Bank of Standish v. Curry*, 442 Mich. 76, 86 (1993). Both language and conduct are to be understood in the light of the circumstances, including "course of performance, course of dealing, or usage of trade" *Id.* at 86. The Plaintiff alleges that the Defendants knew that their promise induced reasonable reliance and action by the Plaintiff, and that the Defendants failed to perform such promise within the agreed upon reasonable, customary, and expected time period, thus leaving the unit inoperable for two years, well beyond the industry custom. The Plaintiff alleged damage in excess of $1,500,000 as a result of Defendants' failure to perform as promised. These facts are sufficient to state a claim for promissory estoppel.

   **D.   Negligence**

The Plaintiff sufficiently pled negligence on the part of Defendants. Paragraph 46 alleges that Defendants conducted the design and treatment of the water system in such a negligent manner as to cause a continual failure to meet all standards for chemical and microbiological contaminants for hemodialysis. Additionally, the Plaintiff alleges Defendants failed to hire competent people to conduct design, treatment and maintenance. [Complaint, ¶ 47]. The Plaintiff claims damage as a result of Defendants' negligence.

These claims are different from the allegations in Plaintiff's breach of contract claim. More importantly, however, Plaintiff at this juncture is free to allege inconsistent theories. Fed. R. Civ. P 8(e)(2).

   **E.   Tortious Interference with a Business Relationship**

The Plaintiff did not address Defendants' arguments to dismiss Count IV.

9

The elements of tortious interference with a business relationship are: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the plaintiff.  *BPS Clinical Laboratories v. Blue Cross and Blue Shield of Michigan*, 552 N.W.2d 919, 925 (Mich.App. 1996)(citation omitted).  The Plaintiff does not allege that the Defendants intentionally interfered with a business relationship.  The Plaintiff alleges that Defendants knew Plaintiff was advertising hemodialysis treatment, Plaintiff had established relationships with hospitals and managed referral care sources, and that Plaintiff would lose Medicaid expense reimbursement and future revenue and profits as a result of the inoperable dialysis unit.

Knowledge of potential detriment is not the same as intent.  Because Plaintiff did not allege the necessary elements for a claim of tortious interference, the claim is dismissed.

**V.   CONCLUSION**

Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.  Count I for breach of contract, Count II for detrimental reliance and Count V for tortious interference with a business relationship and expectancy -- are dismissed.  The case will proceed on Count III for promissory estoppel and Count IV for negligence.

**IT IS SO ORDERED.**

      /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

10

Dated:  September 28, 2005

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 28, 2005.<br><br>s/Linda Vertriest<br>Deputy Clerk |